Our second case this morning is United States v. Broadway 20-1034 and for the appellant Ms. Esser you may proceed. Thank you your honor and may it please the court my name is Meredith Esser and I'm arguing this case on behalf of Jason Alexander Broadway. This is another First Step Act case although it raises slightly different issues. In this case the district court erred when it declined to recalculate Mr. Broadway's career offender guideline range in accordance with the statutory penalties that attached to his offense of conviction. So below the district court correctly concluded that Mr. Broadway was eligible for a sentence reduction under the First Step Act because he was convicted of a covered offense and the required inference from that conclusion was that Mr. Broadway's statutory range was likewise modified. And since his statutory range was modified the career offender base offense level was also modified. The career offender guideline clearly speaks in terms of statutory range for calculation of the base offense level. So the eligibility question resolves the question of what statutory range applies for purposes of the career offender guideline. And what do you contend, what guideline range do you contend applies here? So in this case the original career offender base offense level was 37 and the new base offense level should be 34. And I think that he had an upward, let's see, an upward adjustment for I think possession of a firearm and then a three-level downward adjustment for acceptance of responsibility which I believe brings it to 31 although I don't have my calculation in front of me but I can find it, it's in my opening brief. Can you give me the approximate statutory penalty range? The statutory penalty range I believe is 5 to 40 for the new statutory penalty scheme under the First Step Act or under the Fair Sentencing Act which means that under the career offender guideline the base offense level would be 34 because the career offender guideline says that it's 25 and up for the offense statutory maximum. An offense statutory maximum of 25 and up is 34 for the base offense level. Does that make sense? Notwithstanding all those adjustments is there any reason the court could not, the court can refuse to exercise its discretion and leave this penalty which was life in prison? So, I believe you're asking whether the district court can refuse to exercise its discretion to reduce Mr. Broadway's sentence under the First Step Act? Yes. So, I think in the previous case there was some discussion of what the Brown, what this court's decision in Brown dictates and I think that Brown dictates a recalculation, an accurate recalculation of the guideline range but does not require the district court to change or modify a person's sentence. But in this case there was an inaccurate guideline calculation and so our position is that remand is required so that the district court can come to an accurate calculation of Mr. Broadway's guideline range before considering the other factors that it is permitted to consider under Brown. In calculating the guideline range, could the court look to the quantity that was personally attributable to Mr. Broadway rather than the quantity in the offense of conviction? I think that the quantity is relevant to the guideline calculation only in that the drug quantity calculation would be separate from the calculation under the career offender guideline. And in this case, a calculation under the career offender guideline would in essence trump the drug quantity calculation because the career offender guideline calculation would end up being higher even after remand with a base offense level of 34. My recollection is that the offense level under his drug quantity calculation ended up being a 31, so it's very close to the career offender guideline calculation. In terms of calculating the career offender range, our position is that the drug quantity is not relevant to the career offender guideline calculation. If I could just follow up on that, if we remanded it, should the district court start with a presumption that we start at 28 grams because that's kind of the lowest amount that would be consistent with the indictment and then, as you said, calculate the guideline range based on the new guideline range and sentencing range, and then after it started with kind of a lesser amount tied to the offense, then effectively the court could vary upwards and take into account Mr. Broadway's much larger amount. Is that the way the district court should proceed in these cases? Yes. So, our position again is that the district court would need to start with the base offense level that applies now, assuming that Mr. Broadway's base offense level is 34, but that the district court could, excuse me, vary upward from that range based on the drug quantity. But that would be a variance, it wouldn't be part of the guideline calculation. Yeah, I mean, why, if there's any error here, it would be harmless because his quantity amount was so much higher than the 28 to 279 grams set forth in the new Fair Sentencing Act. Well, I think this court has to find that it's harmless because of what the district court said in its order. The district court clearly said in its order that it was not, that the guideline range had not changed and that therefore a changed guideline range was not giving any sort of context to the 3553A analysis that it conducted. So I do agree that the drug quantity was significant here, but I think the district court's order is very clear that it was not taking into consideration a changed guideline range. And the sort of natural corollary to that is that perhaps if the guideline range had been lowered appropriately, the district court's decision would have come out differently. So I don't think, just looking at the plain language of what the district court wrote in its order, I don't think that a harmless error analysis is appropriate in this particular case. So is it your position that when you're doing your 404B analysis, that the recalculation of the guidelines is mandatory and that if the district court is going to exercise any discretion, it has to be in a 3553A type analysis? Yes. Yes. And I think that that's consistent with this court's decision in Brown, that the district court, as in any other case, must, you know, the starting point, the initial benchmark must be an accurate guideline calculation. And then the court is free to conduct the 3553A analysis based on other factors, including the drug quantity. Okay. So how do you get around the idea that we've said that you may do a 3553A analysis, but you don't have to? So I mean, isn't lurking in our case law the idea that you can justify your decision on the 3553A factors, but you also can justify it on something else? Yes. I think that Brown says that a judge in a First Step Act case does not need to conduct this analysis, but Brown also says that a correct guideline calculation is required. And so our position is that, you know, the case needs to be remanded so that the district court can initially correctly calculate the guideline range and then decide first whether or not it wants, excuse me, wants to exercise its discretion. And then secondly, you know, how that discretion is exercised. So what if Judge Babcock had said, look, I look at this thing and I realize that if I applied 404B in a mandatory fashion, that the guideline calculation would be different and less. But that doesn't seem fair to me to give relief on that basis. And so I'm going to make him responsible for the amount of drugs that he stipulated to. And for that reason, it would still have him up in the same category. And it seems to me that the fair result would be no relief. Where are you then? I mean, I think procedurally, that would be more in line with this court's cases, you know, but that's not that's obviously not what happened. So and I can't really speculate as to any additional procedural issues that would have that would come up in a remand. But I do think that the process that you just articulated, Your Honor, in terms of first Let me ask you this. Would you agree that if there isn't a change in the guideline range, that the court does not have discretion to change the sentence to modify the sentence? I think that that's sort of a hypothetical case. And I don't want to say anything that would affect other cases, but I actually don't agree with that. I think under the First Step Act, if a person is eligible for a sentence reduction, that means that a court has discretion to reduce that person's sentence, even if the guideline range had not been changed. And that could be, you know, a district court's increased understanding of how the crack cocaine versus cocaine based penalties, you know, the racial aspect of that. I think that a lot of cases in a lot of situations, clients and defendants cases, their sentences have been reduced, even when the guideline range had maybe remained the same, based on a lot of the sort of background facts and the sort of zeitgeist of the First Step Act, if you will. I don't know if that answers the court's question. Yeah, let me, I have a follow up. Where in the process do you see it being relevant what the quantity of drugs the person maybe agreed to in the PSR as their actual quantity, as opposed to the indictment quantity? Where is that considered by the district court? So it's considered in two different places, and I think I sort of touched on this a little bit earlier. So in a PSR, the PSR writer will generally calculate a person's guideline range based on drug quantity. And so there'll be sort of a preliminary area where the drug, the guideline range that's based solely on drug quantity is set forth in the PSR. And that's true in this case. And then here, the career offender range was higher than the drug quantity range. And so that essentially trumps the drug quantity range. And then again, I think it is relevant when talking about the exercise of the court's discretion. But I don't think that it's relevant in terms of calculating the actual career offender range. If I may, I would like to reserve the remainder of my time for rebuttal. Thank you, counsel. You may. Let's hear from the government. Ms. Miller? May it please the court. I'm Marissa Miller, and I represent the United States. The court should reject Mr. Broadway's interpretation of Section 404 of the First Step Act because it misreads the text, it would collapse the 404A and B inquiries, and it would create new disparities between similarly situated defendants. I'd like to actually start by addressing Mr. Broadway's assertion that this case is really limited to the career offender enhancement. And the problem with that claim is that this idea is impossible to reconcile with the remainder of Mr. Broadway's argument. And the reason for that is that Mr. Broadway's argument at its crux is that based on the text of 404B and the presence of the term covered offense in that provision, the district court is not permitted to consider any quantity beyond the minimum amount that was charged in the indictment. Because of that, if this court reverses, the decision will amount to a holding that it is an abuse of discretion and therefore legal error for a district court to look at the actual amount of drugs a defendant has explicitly admitted to when it performs the 404B analysis. That's true not just in cases involving the career offender enhancement, but any time the court is asked to perform the 404B analysis. The reason that's problematic is it goes against the text of 404A and 404B, as well as the policies underlying this general provision. Talking about the text, the centerpiece of the defendant's argument is really this idea that every offense that qualifies as a covered offense is by definition one that would have had a different statutory penalty range if it had been committed after the Fair Sentencing Act was passed. It is extremely important to recognize that this idea is a logical fallacy, and once you realize that, the rest of Mr. Broadway's arguments unravel. So why is that incorrect? The reason is the grammatical structure of Section 404A. As at least eight circuits have now held, when you look at the text of Section 404A, the phrase that begins, the statutory penalties for which, that phrase does not modify the formulation. It modifies the words federal criminal statute. So what that means is that when this district court said that Mr. Broadway's crime was a covered offense, it wasn't saying that the statutory range or the statutory maximum for Mr. Broadway's specific crime had changed. All the court was doing was performing the categorical analysis. In other words, recognizing that Section 2 of the Fair Sentencing Act had modified the provision B1A little three, which is the provision that sets forth the penalties for Mr. Broadway's violation. And because of the unique way that Section 841 is structured, those modifications to B1A three don't actually change the statutory maximum for Mr. Broadway's specific violation of 841A. In this case, Ms. Miller, it's, you know, like the previous case, we have quantities that are, you know, way above, you know, any of the statutory minimums. And, you know, so in a sense, looking at the actual amounts here is, you know, it's kind of simple, but you can think of other cases where, you know, where the amounts are a lot closer to these ranges and, you know, the amounts might actually make a difference in a court's consideration of what it should do under the First Step Act. And, you know, and also in some of these cases, you know, in the old days, if it was 50 grams or more and you're looking at three, four, 500 grams, there's not much point in trying to spend a lot of time reducing those amounts. But you can think of a case where it's closer and, you know, before the Fair Sentencing Act, the defendants really didn't have that much incentive to contest amounts because you're never going to get it down to 50, but you can think of other cases where it might make a difference. So why shouldn't we start with the, you know, with the kind of the statutory minimum and then, you know, use that for our guideline range. And then when the court gets the right guideline range, then it can look at the four or five hundred grams as part of its 3553A discretion. Why wouldn't that be a good methodology? So I don't necessarily disagree with the district court going that course. You know, 404B is subject to abuse of discretion. Right. So if we had a very different case where a defendant, you know, maybe we're looking at two hundred ninety grams of crack and they're, you know, unlike this case where the facts are really the police found the crack, they tested the crack. It was 487 grams. It would have been very difficult to contest that. You know, maybe we're looking at a conspiracy. We're looking at something else. If the district court in, you know, in its discretion wants to say, I don't feel comfortable relying on that amount, I'm going to start at this 50 baseline and see what the parties can prove to me. That's fine, but I don't think that's an abuse of discretion. What the defendant is saying is that it is an abuse of discretion any time the district court looks beyond that minimum amount charged. And that's what we find deeply problematic. I also think that it misreads the statute to think that the district court is limited in that way. I think the defendant's argument, again, relies on this understanding of what the word covered offense does in 404 B. And I think, again, very important to look at the text of 404 B. So let's talk about what the phrase covered offense is doing in 404 B. It does two things. First, it tells us which court can reduce the defendant's sentence. Basically, the court that imposed the sentence for the covered offense. The other thing that it does is it tells us the relevant date for what I've described as the counterfactual analysis. And what I mean by that is 404 B says the court may impose a reduced sentence as if the Fair Sentencing Act were in effect, as if it were in effect when at the time the covered offense was committed. So in this case, what the statute really says is the court may impose a reduced sentence as if the Fair Sentencing Act were in effect on October 9th, 2007. And what I'm trying to get at with this is that the phrase covered offense isn't doing any analytical work there. If you actually take the time to diagram this provision and really analyze it, there's no connection either in the syntax or the semantics between the words covered offense and the language that gives the court the discretion to reduce the sentence, which is a reduced sentence. So while the court could, in its discretion, decide that it doesn't feel comfortable relying on a number like 290 grams, depending on the circumstances, that word may and the words as if give the court, I think, the clear authority in a case like this one to say, no, I'm going to impose a reduced sentence as if the Fair Sentencing Act were in effect on October 7th, 2000 or October 9th, 2007. Based on this, the defendant pled guilty to 487 grams. The government charged him with the highest possible offense. He pled guilty to the highest possible offense. I think based on that, the guidelines would not have changed. And, you know, again, there may be cases where the district court comes to a different conclusion and that is not whimsical or arbitrary. But to say that what the district court here did was a legal error is very problematic. I want to talk about, I guess, a little bit more why that's so problematic and look to the structure of 404A and 404B. The entire motivation behind 404B is this idea that Congress thought that these defendants who committed crimes before the Fair Sentencing Act was passed got a raw deal. Some of them got a raw deal because if they had committed their crime five years later, they would have been subject to a very different statutory range. And that's why 404B expressly tells courts that it has to perform this counterfactual analysis to figure out what the defendant's conviction would have looked like if it had happened while the act was in effect. And that's why 404B includes those words as if, I mean, it has a subjunctive clause. That's not a word I've used since high school, but it's essentially expressly instructing the court to try and figure out what would have happened in this alternative universe. So instead of what the defendant is saying, where the court is actually prohibited from looking at what would have happened in that other universe, Congress is actually very clearly asking courts to do that. To conclude otherwise basically makes the 404B analysis exactly the same as the 404A that every single defendant who has a covered offense, which is every every defendant who was convicted of a violation of a crack cocaine offense under 841A, probably B1A3 and B1B3, that they have to assume that that defendant would have been charged one level below what they were charged with. They can't they can't go beyond that, no matter what the record says. If we have a statement from the prosecutor that says, you know. If there had been a higher penalty, I would have charged him under that. In your counterfactual, I think for Mr. Broadway, you would assert that he would have been indicted for possession of 280 grams or more, right? Yes. But doesn't that put the cart before the horse in a sense? Because I don't I can't remember what the indictment charged here, but. You know, you can imagine a case where, you know, the government hasn't figured out what the conspirator, what amounts are going to be attributed to conspirators or what, you know, what the PSR is going to finally come up with here. So why in your counterfactual universe, why should we assume that it would be he would be indicted for 280 just just because that was, you know, a higher number is what happened at the sentencing phase. Sure. And, you know, I guess I want to respond to because I know some courts out there have have raised this concern, right, that, you know, it's unfair to defendants to speculate about this. But if you go and look at those cases, all of it's discussing it in the in the context of 404A and eligibility. And I agree with those courts that it would be unfair to deny a defendant the opportunity to request this relief on the basis of those deductions. But it's a very different thing to say that the court can't consider an amount here where, I mean, you know, the defendant has to stipulate to facts that satisfy the elements of the crime. Here, the defendant stipulated to 487 grams of cocaine to say that it is legal error for the court in conducting this counterfactual analysis where all the the facts that we have, right, we have the stipulation, everything about what the district court here did is what Congress intended for district courts to do. And that's not to say that there aren't other correct ways to resolve this case, but to say that it was arbitrary or incorrect goes a step too far. I do also think that it is important to talk about the disparities that this would create as well. Let me let me stop you for a minute. So you are proposing that for 404A and 404B that we adopt different rules for how we look at the covered offense. So, no, Your Honor, covered offense means a violation of federal criminal statute, the statutory penalties for which were modified. So when we're saying that ability and we've already decided that, yes, I agree. But we're saying we all agree the statutory penalties for 841A have changed. Right. And that's why Mr. Broadway's crime, his specific crime, his crime of possessing 487 grams qualifies as a covered offense. But it's still a covered offense in the context of 404B. So we're not we're not giving that word a different meaning. It's actually it's the same meaning. A covered offense is it's a qualifying offense. It's Mr. Broadway's crime is a qualifying crime. And the court may impose a reduced sentence as if the Fair Sentencing Act were in effect on the date that he committed that crime. And there's nothing in the definition of covered offense. When you when you look at why we're doing that categorical analysis, where it comes from in the grammar, those decisions from the first, second, third, fourth, fifth, sixth, seventh, eighth circuits saying what that phrase modifies. It is those things are not intention. We're not you know, the analysis is different. Yes, but it's not different because I'm asking you to give those words different meanings in two different provisions. The analysis is different because of the way the statutes are written. And and that's the you the court goes back and says, if this had been in effect at the time of the original sentencing, then I'm looking at it and trying to decide where his guideline would be. Exactly. Yes. And then that you say the court is free to look at the actual attributable quantity rather than the indictment quantity. Yes, Your Honor. And, you know, and while I think there is some superficial appeal to the defendant's approach, it does, I think, help to play through what the remand would look like here. The district court would say, OK, well, I have to calculate the guidelines as having changed because I can only look at 50 grams. But in my discretion, I am actually going to look at the full amount here. So technically, the guidelines haven't changed. So therefore, I will not reduce his sentence. With that, we would ask the court to affirm. All right, counsel. Your time expired. Thank you. Some rebuttal for Ms. Lindstrom. You're you're muted. I apologize. I tricked you. I called you the wrong name. So Ms. Essany. Thank you. Just briefly, I think it's just worth pointing out that the government's counterfactual, so-called counterfactual analysis has been addressed and has been rejected by every court, every court of appeals to look into this question. And I understand that the counterfactual analysis has been looked at most closely in the context of determining whether a person is eligible for First Step Act relief. But I think that the reasons for rejecting the counterfactual analysis are equally important in this context. Courts have explained that, you know, first of all, 50 grams is quite a bit less than 280 grams. 280 grams is over five times as much. And there's no suggestion that a grand jury would necessarily have charged a person with that much higher drug quantity. And in this particular case, there might not have been an incentive for Mr. Broadway to challenge the drug quantity in his plea agreement based on such a greater disparity between 50 and 487. But the difference between 280 and 487 is much less. And so to adopt this counterfactual analysis in this case, I think is extremely problematic because the element that he pledged to was 50 grams, not 280 grams. And he never actually pledged to that amount. And then just briefly in terms of disparities, I think the briefing is clear that the disparities can be addressed by the court's exercise of discretion. So if there are no further questions, I would ask that this case be remanded for reconsideration of Mr. Broadway's correct guideline range after the first effect. Thank you. Counsel, you're excused and the case will be submitted.